**Slip Op. 07-167**

UNITED STATES COURT OF INTERNATIONAL TRADE

---

HABAS SINAI VE TIBBI GAZLAR :
ISTIHSAL ENDUSTRISI A.S.,
:
        *Plaintiff*,
:
   v.
:
UNITED STATES,
:
        *Defendant*,     Court No. 05-00613
:
   and
:
NUCOR CORPORATION, GERDAU
AMERISTEEL CORPORATION, and :
COMMERCIAL METALS COMPANY,
:
        *Defendant-Intervenors.*

---

[Granting in part Plaintiff's Motion for Judgment on the Agency Record; Remanding Final Results of U.S. Department of Commerce's administrative review of antidumping duty order for further action in accordance with opinion.]

Dated: November 15, 2007

Law Offices of David L. Simon (David L. Simon), for Plaintiff.

Peter D. Keisler, Assistant Attorney General; Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (David S. Silverbrand); Ada L. Loo, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel; for Defendant.

Wiley Rein LLP (Alan H. Price, John R. Shane, and Maureen E. Thorson), for Defendant-Intervenors.

# OPINION

RIDGWAY, Judge:

In this action, Plaintiff Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. – a Turkish exporter of steel concrete reinforcing bars ("rebar") – contests the final results of the U.S. Department of Commerce's seventh administrative review of the antidumping duty order on Certain Steel Concrete Reinforcing Bars From Turkey. The period of review ("POR") is April 1, 2003 through March 31, 2004. *See generally* Certain Steel Concrete Reinforcing Bars From Turkey: Final Results, Rescission of Antidumping Duty Administrative Review in Part, and Determination To Revoke in Part, 70 Fed. Reg. 67,665 (Nov. 8, 2005) ("Final Results").

Pending before the Court is Plaintiff's Motion for Judgment Upon the Agency Record, in which Habas challenges both the Commerce Department's calculation of Habas' cost of production ("COP") on a single period ("POR") weighted-average basis, and the agency's use of invoice date as the date of sale.

Habas asserts that calculating its production costs on a POR weighted-average results in a mismatch of its sales and its costs, improperly inflating its dumping margin. *See generally* Principal Brief of Plaintiff Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. for Judgment Upon the Agency Record Pursuant to Rule 56.2 ("Pl.'s Brief") at 3-36, 39; Reply Brief of Plaintiff Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. In Support of Motion for Judgment Upon the Agency Record Pursuant to Rule 56.2 ("Pl.'s Reply Brief") at 1-11, 15. Habas further contends that its contract date – not the date of invoice – should be used as the date of sale in Commerce's antidumping duty calculations. *See generally* Pl.'s Brief at 4, 36-40; Pl.'s Reply Brief at 11-15.

Habas requests that this matter be remanded to the Department of Commerce with instructions to recalculate Habas' dumping margin using quarterly averages for COP, and using the contract date as the date of sale for the underlying transactions. *See* Pl.'s Brief at 36; Pl.'s Reply Brief at 1, 4, 13. Habas' motion is opposed by the Government and by Defendant-Intervenors Nucor Corporation, Gerdau Ameristeel Corporation, and Commercial Metals Company ("the Domestic Producers"). *See generally* Defendant's Response to Plaintiff's Motion For Judgment Upon the Agency Record ("Def.'s Brief"); Response Brief of Defendant-Intervenors ("Def.-Ints.' Brief").

Jurisdiction lies under 28 U.S.C. § 1581(c) (2000). For the reasons set forth below, Habas' Motion for Judgment Upon the Agency Record is granted in part, and this matter is remanded to the Department of Commerce for further proceedings in accordance with this opinion.

## I. **Standard of Review**

In reviewing a challenge to Commerce's final determination in an antidumping case, the agency's determination must be upheld unless it is found to be "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (2000). "[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (*quoting* Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Moreover, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."

## II. **Statement of Facts**

In April 1997, the Department of Commerce published an antidumping duty order covering rebar from Turkey. *See generally* Antidumping Duty Order: Certain Steel Concrete Reinforcing Bars From Turkey, 62 Fed. Reg. 18,748 (April 17, 1997) ("the Antidumping Order"). In April 2004, Commerce gave notice of the opportunity to request an administrative review of the Antidumping Order, for the period April 1, 2003 through March 31, 2004. *See generally* Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review, 69 Fed. Reg. 17,129 (April 1, 2004). At the request of the domestic industry, Commerce initiated an administrative review of Habas, among others, the following month. *See generally* Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part, 69 Fed. Reg. 30,282 (May 27, 2004).

Habas participated fully in the administrative review. In mid-August 2004, Habas filed its questionnaire response, seeking to explain, among other things, why its cost of production should be calculated on a quarterly basis, and how the company makes its U.S. sales (such that its contract dates should be treated as the dates of sales). And Habas submitted its first supplemental questionnaire response in December 2004, providing further support for its claim that the contract date is the date of sale.

In late January 2005, Habas responded to supplemental questions concerning the cost of production section of the questionnaire. Commerce posed no follow-up questions concerning Habas' position that its cost of production should be calculated on a quarterly basis. Nor did Commerce ask questions concerning the manner in which Habas reported its quarterly costs. Habas

also filed a submission reconciling the total quantity and value of its sales databases to its financial statements, in February 2005.

In early May 2005, Commerce published the preliminary results of the administrative review. Commerce made a preliminary determination that the dumping margin for Habas was 26.07%. *See generally* Certain Steel Concrete Reinforcing Bars from Turkey; Preliminary Results and Partial Rescission of Antidumping Duty Administrative Review and Notice of Intent to Revoke in Part, 70 Fed. Reg. 23,990 (May 6, 2005) ("Preliminary Results").

Following publication of Commerce's Preliminary Results, Habas filed a case brief and a rebuttal brief with the Department, and also participated in oral argument before the agency. Habas' presentations to the agency focused on the two issues that it now presses here – whether Commerce erred in using POR-average cost (rather than quarterly costs) in determining Habas' cost of production, and whether Commerce erred in using invoice date (rather than contract date) as the date of sale.

The final results of the administrative review were published in November 2005. Commerce rejected Habas' arguments as to quarterly costing and date of sale, and calculated Habas' final dumping margin as 26.07%. *See generally* Certain Steel Concrete Reinforcing Bars From Turkey: Final Results, Rescission of Antidumping Duty Administrative Review in Part, and Determination To Revoke in Part, 70 Fed. Reg. 67,665 (Nov. 8, 2005) ("Final Results"); Issues and Decision Memorandum for the Antidumping Duty Administrative Review on Certain Steel Concrete Reinforcing Bars from Turkey - April 1, 2003, through March 31, 2004 ("Decision Memorandum").

### III. <u>Analysis</u>

Habas here challenges two aspects of the Commerce Department's determination in the seventh administrative review of the antidumping duty order on rebar from Turkey. Specifically, Habas takes issue with Commerce's determination to use a single, cost-averaging period, contemporaneous with the period of review, in calculating Habas' dumping margin. In addition, Habas disputes Commerce's determination to use invoice date as the date of sale in its calculations. Both issues are discussed in turn below, and – for the reasons detailed there – are remanded to the agency for further consideration.

#### A. <u>Commerce's Calculation of Habas' Cost of Production</u>

Habas first challenges Commerce's determination to calculate Habas' cost of production using a single weighted-average period of review, rather than quarterly-average costs. *See generally* Pl.'s Brief at 1, 3-4, 5-36, 39-40; Pl.'s Reply Brief at 1-11, 15. Habas contends that "Commerce's use of a single average cost for the entire POR created a mismatch between sales and costs which distorted the comparisons between US price and normal value." Pl.'s Brief at 3-4. Specifically, Habas explains:

> Habas' HM [Home Market] prices move in lockstep with its cost of production, quarter by quarter. Habas had only three US sales in the POR, all made in June, July and August 2003. During the first three quarters of the period, Habas' costs fluctuated within a narrow band. In the fourth quarter of the POR (Q4-POR), Habas' cost of steel scrap, the raw material of rebar, increased by 44 percent. When Habas' cost of production is calculated on a POR-average basis, the surge in scrap cost in the Q-4 POR increases the Q2-POR cost by over 10 percent. This, in turn, causes all Q2-POR home market sales to be below cost. Consequently, the antidumping computer program matches Habas' US sales in June – August 2003 to a handful of HM sales in May 2003 which were the only sales within 90 days of the US sales that were above cost using the POR-average cost methodology. This distortion in the

> match between US sales and normal value is caused by the use of POR-average cost, and specifically by the surge in scrap cost in the fourth quarter.

Pl.'s Brief at 4.

According to Habas, the asserted "mismatch" between its sales and its costs renders Commerce's methodology in violation of "the principle of comparability and the goal of contemporaneity set forth in Thai Pineapple Canning Ind. Corp. v. United States, 273 F.3d 1077 (Fed. Cir. 2001) and similar judicial, administrative and WTO panel cases." *See* Pl.'s Brief at 4. Habas further asserts that "[m]ultiple averaging periods are the tool by which Commerce ensures that a respondent faced with a cost surge in the last quarter of the POR and sales only in the first portion of the POR can avoid a mismatch and be assured of contemporaneity among its databases." *Id*. at 40. Habas therefore concludes that, in the case at bar, Habas' cost of production should have been calculated based on its quarterly costs; and Habas urges that this matter be remanded to Commerce with specific instructions to do exactly that. *See* Pl.'s Brief at 36; Pl.'s Reply Brief at 4.

In a disarmingly candid (and succinct) response, the Government requests that Commerce be permitted a "do-over." *See* Def.'s Brief at 5-7. The Government readily admits that "Commerce's Final Results do not adequately address [Habas'] arguments," and that a proper response requires that the agency "go beyond its fundamental analysis laid out in its Final Results." Def.'s Brief at 6. The Government states that "[a] more in-depth analysis" is required "due to the technicality of Habas' argument and the cost methodology that Commerce employed in this determination." *Id*. The Government therefore asks "that the Court grant a remand to Commerce with respect to its calculation of Habas' cost of production," to allow the agency to further consider

the arguments that Habas has advanced. *See id*. at 7.

For their part, the Domestic Producers devoted the bulk of their brief to a full frontal assault on Habas' challenges to Commerce's calculation of its cost of production, arguing that the agency's calculation should be sustained in all respects. *See generally* Def.-Ints.' Brief at 2-18, 24. *But see* Pl.'s Reply Brief at 4-11. In the course of oral argument, however, the Domestic Producers advised that they do not oppose the agency's request for a voluntary remand on the issue. *See* Recording of Oral Argument at 1:12:00 (Oct. 26, 2006).

Habas vehemently opposes remanding the issue to the agency for further consideration. *See generally* Pl.'s Reply Brief at 1, 4. In essence, Habas argues that the parties have been down this road before. According to Habas:

> During the administrative proceeding, Commerce issued a preliminary result based on a particular rationale. Habas' case brief addressed Commerce's rationale. Commerce then chose to keep the same result, but to formulate a new rationale [in its Final Results]. . . . In its principal brief [filed with the Court], Habas exposed the errors of Commerce's rationale. Now, having read Habas' principal brief, the government would like another chance before this court to formulate a more persuasive rationale.

Pl.'s Reply Brief at 2. Habas expresses concern that "[t]he government nowhere suggests that it is considering a change in position," and surmises that Commerce "simply wants another chance to come up with a rationale to support its previous decision." *See* Pl.'s Reply Brief at 1. Habas cautions against giving Commerce "yet another chance to find a theory that will support [its] predetermined result," and argues that Commerce is not entitled to yet "another bite at this apple." *See* Pl.'s Reply Brief at 3-4.

Habas concedes – as it must – that, under <u>SKF</u>, an agency is generally entitled to a voluntary

remand to reconsider its position, "if the agency's concern is substantial and legitimate." *See* Pl.'s Reply Brief at 3-4 (*quoting* SKF USA, Inc. v. United States, 254 F.3d 1022, 1028-29 (Fed. Cir. 2001)). But Habas charges that Commerce's concern here is "wholly illegitimate." *See id*. at 4. According to Habas, "Commerce remains committed to its result," and "has a margin in search of a rationale." *See id*. Concluding that "[s]uch prejudgment is the very opposite of rule-based decision-making," Habas insists that the Government's request for a voluntary remand to once again revisit the calculation of Habas' cost of production "should be rejected out of hand." *Id*.

It is difficult not to sympathize with Habas' palpable frustration. But the government must be presumed to have acted in good faith. *See*, *e.g.*, Clemmons v. West, 206 F.3d 1401, 1403-04 (Fed. Cir. 2000) (*citing* Sanders v. U.S. Postal Serv., 801 F.2d 1328, 1331 (Fed. Cir. 1986)). To overcome that presumption, the proof must be "almost irrefragable." Clemmons v. West, 206 F.3d at 1403-04; *see also* Galen Medical Assoc., Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004). Here, Habas has pointed to no evidence to substantiate its assertions of prejudgment on the part of Commerce. And "[u]nsubstantiated suspicions and allegations are not enough." Spezzaferro v. Federal Aviation Admin., 807 F.2d 169, 173 (Fed. Cir. 1986).

Moreover, although Habas is (arguably with some reason) skeptical of the outcome of the remand that Commerce requests, the Government indicates that the agency plans to use the proceeding to take a fresh look at the issue. The Government states that, "[u]pon remand, Commerce will reexamine the issue of how it calculated Habas' cost of production. Commerce will then issue a draft remand determination and accept comments from the parties upon the draft. At that point, taking into consideration and addressing all of the comments then upon the administrative

Court No. 05-00613 Page 10

record, Commerce will make and file a remand determination with the Court." Def.'s Brief at 7; *see also* Recording of Oral Argument at 1:03:04 (Government counsel offers assurances that "Commerce will re-examine this issue on remand. It has not come to any definitive conclusion at this point").

In principle, a court must be chary of trespassing on an agency's mandate and discretion, by re-weighing facts and substituting its judgment for that of the agency. Indeed, as the Government observes, that is true in spades in cases such as this, as the Court of Appeals has emphasized that Commerce is the "master" of the antidumping law, and that "[f]actual determinations supporting anti-dumping margins are best left to the agency's expertise." *See* Def.'s Brief at 7 (*quoting* F.lli De Cecco di Filippo Fara S. Martino S.p.A., 216 F.3d 1027, 1032 (Fed. Cir. 2000)); Micron Tech., Inc. v. United States, 117 F.3d 1386, 1394 (Fed. Cir. 1997). Further, the instant case is not one where it can be said that a remand to the agency would be futile. *See generally* Nippon Steel Corp. v. United States, 458 F.3d 1345 (Fed. Cir. 2006).[1]

The Government's request for a voluntary remand must accordingly be granted. On remand, the Commerce Department shall consider anew the calculation of Habas' cost of production, fully articulate the rationale for its redetermination on the issue, and recalculate Habas' dumping margin, if appropriate.

### B. Commerce's Determination of the Date of Sale

Habas argues that Commerce also erred in using the date of invoice as the date of sale in its

---

[1] *But cf.* F.lli De Cecco di Filippo Fara S. Martino S.p.A., 216 F.3d at 10-34-35.

antidumping duty calculations. Habas maintains that all material terms of its contracts were fixed as of the contract date, and that Commerce therefore should have based its calculations on that date. *See generally* Pl.'s Brief at 4, 36-40; Pl.'s Reply Brief at 11-15.

As discussed above, Commerce's Final Results pointed to a billing adjustment on one of Habas' invoices as proof that the material terms of sale were not established at the time of contract. *See* section II, *supra*; Decision Memorandum at 31 (comment 6). But, according to Habas, Commerce simply misread the record. Habas asserts that the billing adjustment at issue was a penalty for late delivery, and that the penalty was specifically provided for by the terms of the parties' contract. *See* Pl.'s Brief at 4, 37-38, 40; Pl.'s Reply Brief at 12, 15.

As a threshold matter, the Government asserts that Habas' challenge to Commerce's use of the date of invoice is barred by the doctrine of exhaustion of administrative remedies. The Government claims that Habas' submissions in the course of the underlying administrative proceeding made no mention of the contractual penalty for late delivery, and argues that Habas may not raise the issue for the first time in this forum. *See generally* Def.'s Brief at 2-3, 5, 8-10; *see also* Woodford v. Ngo, ____ U.S. ____, ____, 126 S.Ct. 2378, 2384-86 (2006) (discussing doctrine of exhaustion); Parisi v. Davidson, 405 U.S. 34, 37-38 (1972) (same); McKart v. United States, 395 U.S. 185, 193-95 (1969) (same).

But the Government overstates its case. In one of its questionnaire responses, Habas expressly noted that the billing adjustment was "a result of not making the shipment within the time limit set forth by Habas' customer." *See* Pl.'s Reply Brief at 12 (*citing* Habas response to

Court No. 05-00613                                                                                              Page 12

questionnaire section C at C-15 (Aug. 16, 2004) (Conf. Doc. No. 2 at 416)).[2]  At the same time that it filed that questionnaire response, Habas also submitted the relevant letter of credit, with the contract at issue which included the late delivery penalty clause.  *See* Pl.'s Reply Brief at 12-13 (*citing* contract/letter of credit (Conf. Doc. No. 2 at 79-83)).  Thus, contrary to the Government's implication, Habas' reliance on the late delivery penalty clause was a matter of record in the underlying administrative proceeding.

The Government's exhaustion argument is further undermined by the fact that Commerce, in effect, changed horses midstream.  Commerce's Preliminary Results did not refer to the billing adjustment as a justification for rejecting the contract date in favor of the invoice date.  Instead, Commerce declined to use the contract date based on its finding that "neither the actual unit price nor the actual quantity are set until the time of shipment (*i.e.*, when the actual quantity is known)." *See* Concurrence Memorandum – Preliminary Results of Antidumping Duty Administrative Review on Certain Steel Reinforcing Bars From Turkey at 6-7 (May 2, 2005) (Pub. Doc. No. 167 at 6-7). Commerce further noted that use of the invoice date "would be consistent with [the agency's] date of sale methodology."  *Id*.

Habas responded to the agency's preliminary finding by seeking to demonstrate that, as to each of its sales, the quantity shipped was within the tolerances established in the contract, and the unit value was precisely as set forth in the contract.  *See* Pl.'s Brief at 36 (*citing* Habas Case Brief at 26 *et seq*. (Pub. Doc. No. 186 at 33 *et seq*.)).  Only in issuing its Final Results did Commerce

---

[2] Because the administrative record in this action includes confidential information, two versions of that record were prepared.  Citations to public documents are noted as "Pub. Doc. No. ____," while citations to the confidential versions are noted as "Conf. Doc. No. ____."

point to the billing adjustment as the reason for its use of the date of invoice, rather than the date of contract, as the date of sale. *See* Decision Memorandum at 31 (comment 6). And Habas had no opportunity thereafter to brief the matter at the administrative level.

Because Commerce first cited the billing adjustment as the rationale for its use of the date of invoice as the date of sale when it issued the Final Results, Habas was not on notice of the need to highlight the late delivery penalty clause until that time. It would thus be unreasonable to expect Habas to have briefed the effect of that contract clause in its submissions to the agency any more extensively than it did. Under the circumstances, the Government cannot fairly be heard to complain that Habas failed to exhaust its administrative remedies; Habas had no real opportunity to do so.

Habas argues, on the merits, that the evidence of record establishes that the material terms of each of its sales were fixed as of the contract date. Habas further takes the position that the date of sale issue is now ripe for decision, and urges that – on the strength of the parties' briefs, and the existing administrative record – the Court should rule that the contract date is the date of sale, and remand the matter to Commerce with specific instructions to recalculate Habas' antidumping margin accordingly. *See* Pl.'s Reply Brief at 13 (noting that Habas "strongly opposes" remand to agency for further consideration of date of sale issue); *see generally* Pl.'s Brief at 4, 36-40; Pl.'s Reply Brief at 11-15.

The Domestic Producers argue, in contrast, that "[Commerce's] regulations express a marked preference for the use of invoice date, and that this preference has been upheld by the Court," that Habas "has failed to provide complete evidence regarding its sales," and that the evidence that has been presented by Habas "indicates that contract terms remained subject to change and renegotiation

Court No. 05-00613 Page 14

after the contracts were signed." *See generally* Def.-Ints.' Brief at 18-24. The Domestic Producers thus conclude that Commerce's use of the invoice date as the date of sale is supported by substantial evidence in the record, and should be sustained. *See* Def.-Ints.' Brief at 3, 24.[3]

As the Government points out, however, the appropriate course under the circumstances is a general remand to Commerce. *See generally* Def.'s Brief at 10-11. Litigation counsel's *post hoc* rationalizations are no substitute for the agency's own reasoned decisionmaking on the record. And an agency's action may be upheld, if at all, only on the grounds articulated by the agency itself. *See* Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168-69 (1962).

Here, because Commerce did not consider Habas' explanation for the billing adjustment in reaching its determination on date of sale, the existing record provides no rationale to serve as a basis for judicial review of the agency's action. Considerations of judicial economy and deference to agency autonomy and expertise therefore counsel remand:

> Remand will allow all parties to fully exhaust their administrative remedies, and will afford Commerce the opportunity to consider [the parties' evidence and arguments on the issue], find facts, apply its expertise to the record, and explain the bases for its action. Remand also will protect agency autonomy, and allow Commerce to exercise the discretion granted it by Congress. Finally, by affording Commerce an opportunity to correct any errors it may have made, remand conceivably may obviate entirely the need for further judicial review [ – at least on this issue].

Bethlehem Steel Corp. v. United States, 25 CIT 519, 531, 146 F. Supp. 2d 927, 939 (2001) (*citing* 2 K. Davis & R. Pierce, Jr., Administrative Law Treatise §§ 15.2 (*citing* McKart v. United States,

---

[3] In the course of oral argument, the Domestic Producers acknowledged that – if Commerce's use of the date of invoice as the date of sale were not sustained on the existing record – remand to the agency for further consideration of the issue would be appropriate. *See* Recording of Oral Argument at 1:12:00.

Court No. 05-00613                                                                                                               Page 15

395 U.S. at 193-95), 15.12 (3d ed. 1994)).

Accordingly, the "date of sale" issue too must be remanded to Commerce, so that the agency may reconsider (anew) the use of contract date *versus* invoice date as the "date of sale," so that the agency may explain the rationale for its redetermination on the issue, and so that the agency may recalculate the dumping margin for Habas, if appropriate.[4]

## IV. Conclusion

For all the reasons set forth above, Plaintiff's Motion for Judgment Upon the Agency Record is granted in part, and this matter is remanded to the Department of Commerce for further action not inconsistent with this opinion.

A separate order will enter accordingly.

/s/ Delissa A. Ridgway
_____
Delissa A. Ridgway
Judge

Dated: November 15, 2007
         New York, New York

---

[4] Because Habas had no timely notice of Commerce's concern about the billing adjustment, the existing evidentiary record may not be sufficient to support a "substantial evidence" review of any relevant factual findings by the agency. Accordingly, it may be necessary for Commerce to reopen the administrative record on remand, to allow the submission of further evidence on point.

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S., | : | |
| *Plaintiff*, | : | |
| v. | : | |
| United States, | : | |
| *Defendant*, | : | Court No. 05-00613 |
| and | : | |
| Nucor Corporation, Gerdau AmeriSteel Corporation, and Commercial Metals Company, | : | |
| *Defendant-Intervenors.* | : | |

# **ORDER**

In accordance with the opinion of the Court issued this date in this matter, it is hereby

ORDERED that this matter is remanded to the U.S. Department of Commerce for further proceedings not inconsistent with that opinion; and is further

ORDERED that the Department of Commerce shall file the results of this remand with the Court no later than February 15, 2008; and it is further

ORDERED that any comments on those results shall be filed no later than March 17, 2008; and it is further

ORDERED that the Department of Commerce's response to any comments shall be filed no later than 21 days after the filing of those comments.

/s/ Delissa A. Ridgway
Delissa A. Ridgway, Judge

Dated: November 15, 2007
  New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____    By: _____
                                       Deputy Clerk